FILED
JUN 26 2008

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| CORNERSTONE DISTRIBUTING, INC., | \* | CIV 06-4267 |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER |
| SCHUFT FAB II, INC.; NICK SCHUFT, and ANDREW H. ASHWILL, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Plaintiff, Cornerstone Distributing, Inc.'s, request for preliminary injunction (Doc. 81). Specifically, Plaintiff requests that the Court enjoin Defendants, Schuft Fab II, Inc. ("SFII"), Nick Schuft ("Schuft"), and Andrew H. Ashwill ("Ashwill") from further breaching an Agreement entered into by the parties.

BACKGROUND

In 1999, Defendant, Schuft, established SFII after graduating from high school and training as a welder. Ashwill, a trained tool and dye machinist, worked as an independent contractor designing SFII's product upon request from Schuft. Both Schuft and Ashwill are the purported inventors of the Sidewinder, a pivoting, telehandling attachment that can be attached to fork lifts, telehandlers, lift trucks, boom trucks or other material handling vehicles.

On or about March 9, 2006, Plaintiff and Defendants, Schuft and Ashwill, entered into an agreement entitled SIDEWINDER AND ITS IMPROVEMENTS PATENT RIGHTS PURCHASE AGREEMENT ("Agreement"), in which it appears that Defendants, Schuft and Ashwill, assigned any and all of their rights in the Sidewinder to Plaintiff in exchange for a $75,000 down payment and royalty fees per unit sold.

Specifically, the Agreement provides that Defendants agree to assign and transfer any and all rights, title and interest to the patent application filed on January 12, 2006, and having serial No. 60/758,469 to Plaintiff along with any know-how or trade secrets for the Sidewinder.

(Agreement ¶ 2.) These rights extend to any future modifications to the Sidewinder which would permit one to use the product with other brands of telehandlers. (Agreement ¶ 2.) Per the Agreement, in the event the United States Patent Office will not issue a patent for the Sidewinder, the Agreement becomes null and void and Defendants must reimburse Plaintiff for the full amount of the attorneys fees spent to apply for a patent plus the original down payment of $75,000. (Agreement ¶ 6.)

In addition to the patent rights, the Agreement grants Plaintiff the right to exclusively manufacture, distribute, market, and sell the Sidewinder and any improvements in the entire United States of America. (Agreement ¶ 9.) Pursuant to the Agreement, Defendants are to provide Plaintiff with the mechanical drawings and sketches necessary for Plaintiff to begin manufacturing the Sidewinder and accompanying components needed for it to function on different telehandlers. (Agreement ¶ 2.) The Agreement also states that Defendants will continue to research and develop improvements to the Sidewinder at Defendants' own cost and shall pass that information on to Plaintiff for an amount to be negotiated as those developments occur. (Agreement ¶ 5.)

Finally, the Agreement contains a non-compete provision which prohibits Defendants from manufacturing, selling, or marketing in the United States, a "similar but slightly different product like the Sidewinder which operates the telehandler arm of all brands of telehandlers or forklifts." (Agreement ¶ 10.)

Both parties have indicated to the Court that the Patent Office has provided them with no estimate as to when it intends to make a determination on the Sidewinder patent application. Meanwhile, Defendants are engaged in selling the EZHandler which Plaintiff contends is a direct violation of the Agreement. The primary difference between the EZHandler and the Sidewinder model that Defendants first developed is that the EZHandler uses a hydraulic rotary actuator to generate torque to rotate the carriage whereas original Sidewinder model uses a gear-driven motor to do the same. Plaintiff argues that even if the Court finds the EZHandler is not a "similar but slightly different" product under the terms of the non-compete provision, that it is an "improvement" to which Plaintiff has a right to exclusively manufacture, market, and distribute under Paragraph 9 of the Agreement.

It should be noted that subsequent to the time SFII began manufacturing and selling the

EZHandler, Plaintiff also developed an actuator-driven Sidewinder model and the sales of this product have exceeded the gear-driven model.

Defendants filed a Renewed Motion for Stay (Doc. 74), contending that any judgment issued prior to a determination by the Patent Office on Plaintiff's patent application would be premature. Specifically, Defendants argue that even if the Court finds that Defendants are in breach of the Agreement, the remedy to be awarded will be dependent, in part, on whether or not Plaintiff is issued a patent on the Sidewinder since Paragraph 6 of the Agreement provides that the contract becomes "null and void" in the event the patent application is denied.

Plaintiff contends that the issuance of a preliminary injunction is appropriate in the event that the Court stays this action. (Doc. 81). In particular, Plaintiff argues that a permanent injunction, which Plaintiff seeks in its Complaint, is one of the only remedies available to it since the evidence on record indicates that SFII has transferred all of its assets to the bank, thus rendering it impervious to a money judgment. Accordingly, staying the trial without a preliminary injunction enjoining Defendants from selling the EZHandler, will result in Plaintiff accumulating further injury from Defendants' alleged breach for which no remedy exists.

The Court held a hearing on these motions on June 18, 2008 at 9:30 a.m. At the conclusion of the hearing, the Court issued an oral order granting Defendant's Renewed Motion for Stay until the Patent Office has made a determination on whether or not to grant the patent application for the Sidewinder. The Court took under advisement Plaintiff's Renewed Motion for Preliminary Injunction.

After careful consideration of the issues, the Court hereby grants Plaintiff's renewed motion for preliminary injunction.

DISCUSSION

A preliminary injunction is an appropriate remedy when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Factors a court takes into consideration in deciding whether to issue a preliminary injunction include: (1) the threat of irreparable harm to plaintiffs; (2) the state of the balance between this harm and the injury that granting the temporary restraining order will inflict on

defendants; (3) the probability of plaintiff's success on the merits; and (4) the public interest. *Id.* In balancing the equities, no single factor listed above is determinative. *Id.*

While the Court denied Plaintiff's initial request for preliminary injunction (Doc. 27), new facts and circumstances have arisen which justify granting a preliminary injunction on the sales of EZHandlers by Defendants. For example, the public interest in seeing that contracts are lived up to, which the Court cited as a factor in denying Plaintiff's initial request for preliminary injunction, may no longer be met by a damages decision since SFII has now transferred all of its assets to the bank. Also, subsequent deposition testimony by the Defendant that EZHandler sales have constituted only 10% of SFII's business since the time SFII started making the product, as opposed to the 60% which Defendants had represented to the Court when it was evaluating Plaintiff's initial preliminary injunction request, indicates that the any injury to SFII resulting from a preliminary injunction may be less than the Court originally had determined.

Finally, the Court finds the likelihood that Plaintiff will ultimately succeed on the merits to be fairly high. It appears from the testimony at the hearing that the actuated EZHandler is an "improvement" upon the original gear-driven Sidewinder under Paragraph 9 of the Agreement since sales in the marketplace of actuator-driven handlers are higher than the sales of gear-driven handler. Subsequent to the time SFII began manufacturing and selling the EZHandler, Plaintiff also developed an actuator-driven Sidewinder model and the sales of this product have exceeded those of the gear-driven model. Therefore, by continuing to manufacture and sell the EZHandler, Defendants appear to be in breach of Paragraph 9 of the Agreement which gives Plaintiff the exclusive right to manufacture, distribute and market the Sidewinder and *any improvements* throughout the United States. For these reasons, the Court concludes that Plaintiff has a high probability of success on all claims arising from the breach of this provision. Additionally, while Plaintiff argued at the last hearing that Defendants did not provide Plaintiff with the improvement, whether or not that will be proven will be determined at another time.

Before the Court may issue a preliminary injunction in this case, however, pursuant to Federal Rules of Civil Procedures 65(c), Defendant is required to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In order determine the bond Plaintiff will be required to post in this case, the Court requests that Defendants provide to the Court (1) the

number of EZHandlers that are currently in inventory along with (2) Defendant's cost for each EZHandler, specifying labor and material cost and (3) the number of actuators currently in inventory and (4) the cost of each actuator.

For the foregoing reasons it is hereby ORDERED:

(1) Plaintiff's renewed motion for preliminary injunction (Doc. 81) is GRANTED. Defendants are enjoined from selling the EZHandler and any improvements or changes to that product until a judgment is issued on the merits of this case.

(2) Defendants must provide the Court with the number of EZHandlers that are currently in inventory along with the labor and material cost of each unit. Additionally, Defendants must provide the Court with the number of actuators currently in inventory which have not been incorporated into an EZHandler and the cost to Defendant of each actuator. These figures will assist the Court in determining the security Plaintiff must provide in the event it does not ultimately succeed on the merits of its case.

Dated this 26th day of June, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Shelly Margulies*
    (SEAL)    DEPUTY